IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAM CONSIGLIO,

    Plaintiff,                      No. CIV S-05-1701 GEB GGH P

    vs.

JEANNE WOODFORD, et al.,

    Defendants.                  ORDER

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are: 1) defendants' motion, pursuant to 28 U.S.C. § 1915(g), seeking involuntary dismissal, filed on January 26, 2006, to which plaintiff filed a "response," on March 1, 2006; defendants filed a reply on March 10, 2006; 2) plaintiff's motion for leave to file a second amended complaint, filed on February 13, 2006, to which defendants filed an opposition; 3) plaintiff's unsupported requests for transfer, filed on March 27, 2006 and April 4, 2006, which are denied; 4) plaintiff's "motion" to compel magistrate to rule on the motion to amend, filed on July 19, 2006, hereby denied as moot; 5) plaintiff's July 19, 2006, request for the court to substitute in the name of the new California Department of Corrections and Rehabilitation (CDCR) Director for that of Jeanne Woodford, who is sued in her official capacity

for prospective injunctive relief only, is granted, pursuant to Fed. R. 25(d), and James Tilton, Acting Secretary of the CDCR, is substituted in.[1]

Background

This complaint, wherein plaintiff alleges that three separate injuries had been untreated for an extended period within the state correctional system, was transferred from the Northern District by order filed in this court on August 24, 2005. On September 1, 2005, plaintiff filed a panicked letter, appearing to threaten suicide, seeking an emergency restraining order to keep him from being transferred to another prison without his injuries having been treated.

On September 2, 2005, the court granted plaintiff in forma pauperis status and found the original complaint appropriate for service upon defendant Woodford, also granting plaintiff leave to name additional defendants within 30 days. On the same day, September 2, 2005, the undersigned construed plaintiff's September 1, 2005, letter as a motion for a temporary restraining order and directed defendant Woodford to file a response within ten (10) days, informing the parties that the court intended to act upon the request within two weeks. In the same order, the Attorney General and the defendant were directed to "take any steps necessary to contact prison authorities and staff at Mule Creek State Prison to monitor plaintiff in light of his suicide threat." See, Order, filed on 9/2/05. At the same time, the court noted that, while plaintiff sounded desperate, it might turn out that plaintiff was being "manipulative and histrionic." Id. Within the order, the court identified the gravamen of plaintiff's complaint: that separate injuries to his knee, back and shoulder, which occurred in the prison laundry beginning in January of 2000, had remained untreated, causing him excruciating pain; plaintiff alleged further that he was subjected to prison transfers by the CDCR for the deliberate purpose avoiding medical treatment for his injuries. Id.

---

[1] The CDCR apparently no longer names a director of the entity as a whole and has re-structured, as well as re-named the state's correctional agency/department.

On September 2, 2005, and September 6, 2005, plaintiff filed additional letters, threatening his own life should he be transferred prior to medical treatment for his injuries (at the same time stating in the 9/2/05 letter: "I'm not currently suicidal").   Further requests for the court to stop plaintiff's apparently impending transfer to Salinas Valley State Prison (SVSP), complaining that this would constitute his fourth transfer in 18 months, were filed on September 9, 2006, and on September 13, 2005.  On September 13, 2005, plaintiff also filed a first amended complaint.  On September 16, 2005, defendant filed her response to plaintiff's TRO motion; on the same day, plaintiff filed yet another letter, this one wholly irrelevant to the issues at hand, regarding the proposed transfer/movement of groups of inmates.

On September 20, 2005, on the showing made, finding that the balance of hardships tipped decidedly in plaintiff's favor, and although unable to evaluate fully as yet the likelihood of plaintiff's prevailing on the merits, this court recommended the issuance of TRO, pending adjudication of a preliminary injunction motion, prohibiting plaintiff's transfer to SVSP, or any other prison facility, from MCSP (without at least the submission of declarations to the court assuring that SVSP had the capacity to meet plaintiff's medical needs and that his conditions would be treated forthwith).  On September 20, 2005, the undersigned also found service of the first amended complaint, filed on September 13, 2005, appropriate for service.  In addition, on September 20, 2005, the court determined that this case might be appropriate for counsel and directed that the King Hall Civil Rights Clinic review the case file and determine whether or not they wished to be appointed as volunteer counsel, within 30 days.

On September 21, 2005, plaintiff filed another copy of his first amended complaint,[2] and filed various other documents on September 22, 2005, September 27, 2005, September 28, 2005, September 29, 2005 (two of which concerned documents related to the serving of his first amended complaint).  By Order, filed on September 30, 2005, the Honorable

---

[2] This duplicative amended complaint was stricken by order filed on October 20, 2005.

3

Garland E. Burrell, Jr., finding that plaintiff's concern about a possible transfer had not been shown to constitute a significant threat of irreparable harm, did not adopt the findings and recommendations of the undersigned and denied plaintiff's motion for a TRO.

On October 3, 2005, plaintiff filed his motion for preliminary injunction. On October 5, 2005, plaintiff filed a letter, upset by the denial of the TRO, apparently under the mistaken belief that by signing a consent form to proceed before the magistrate judge, that this court's recommendation could not be "overruled."[3]  In a separate filing on the same day, October 5, 2005, plaintiff complained about the processing of mail at MCSP. Plaintiff filed on October 6, 2005, both a request for an evidentiary hearing re: his transfer, and objections to the order denying the TRO. On October 12, 2005, plaintiff filed a request for an evidentiary hearing with regard to his mail. On October 13, 2005, Judge Burrell affirmed his September 30, 2005, order.

On October 14, 2005, defendant Woodford filed an opposition to the motion for preliminary injunction; on the same day, plaintiff filed a letter complaining about defendant's counsel and, another letter, on October 17, 2005, alleging "possible misconduct" on the part of defendant's counsel. On October 20, 2005, this court directed the U.S. Marshal to serve the first amended complaint upon defendants Jeanne Woodford, R. Hernandez, D. Arnold, K. Reyes, J. Marshall, R. Campbell, C. Smith, Brett Williams and Bradley Williams. On October 20, 2005, there are three docket entries for filings by plaintiff; on October 21, 2005, plaintiff filed yet another document, seeking an evidentiary hearing yet again with regard to the basis for his transfer, but promising to cooperate fully with whatever decision this court rendered (apparently, with respect to his motion for preliminary injunction).

On October 27, 2005, this court filed an order and findings and recommendations. The court denied as unnecessary plaintiff's multiple requests for an evidentiary hearing. The

---

[3] The undersigned only points this out to demonstrate plaintiff's shifting sentiment, in light of his later filings, as to which jurist he wishes to adjudicate this matter.

1  undersigned recommended denial of plaintiff's motion for preliminary injunction, but also
2  ordered that, if plaintiff were transferred to SVSP from MCSP, defendants would be required

> to file a declaration, within sixty days, ascertaining that each step set forth by Drs. Lipon and Lee for plaintiff's safe transfer has been effected and that no currently scheduled medical appointment/evaluation/procedure for plaintiff is vacated or cancelled, absent extraordinary cause. Plaintiff's mental condition must be monitored and defendants must include with the affidavit a status report on his transfer, on his safe housing at SVSP, and on the progress of his expedited medical treatment. There will be no extension of time. Failure to comply with this order will result in the imposition of sanctions against defendants.

9  See Order (& Findings and Recommendations), filed on 10/27/05, p. 24.

10 Plaintiff was granted an extension of time to file his objections, which he did on
11 November 23, 2005. Judge Burrell adopted the findings and recommendations, by Order, filed
12 on December 21, 2005. Plaintiff also filed requests, letters and exhibits, dated November 14,
13 2005; November 23, 2005. At the request of defendants, the undersigned modified the October
14 27, 2005, order to require only defendant Woodford, rather than any as-yet unserved defendants,
15 to file the declaration and status report and clarifying that the 60-day period for filing would
16 begin following plaintiff's transfer. See Order, filed on November 29, 2005.

17 Plaintiff filed two letters, again protesting his transfer to SVSP, dated December
18 13, 2005, and December 15, 2005, claiming, inter alia, to have two documented enemies at
19 SVSP, and that he had been informed, by an unnamed lieutenant, that if he dismissed the instant
20 case, his transfer would be cancelled. By order, filed on December 19, 2005, the undersigned
21 directed the attention of the Attorney General and defendant Woodford to plaintiff's 12/13/05
22 letter regarding plaintiff's belief that his life was immediately to be placed in jeopardy, and
23 directed them to take the requisite steps to determine whether plaintiff's claims were credible and
24 to assure the safety of plaintiff. On December 19, 2005, plaintiff filed a letter addressed to "Ms.
25 Silva," asking to be placed in administrative segregation for his protection should he be
26 \\\\\

1  transferred to SVSP, despite the mental deterioration he feared would ensue from such
2  placement.
3        On December 23, 2005, although not required to do so by this court's December
4  19, 2005, order, defendant Woodford filed a status report with regard to this court's admonition
5  to ascertain the credibility of plaintiff's claim that he had two enemies at SVSP and to protect
6  plaintiff's safety with regard to his claim. Defendant includes a declaration by B. Moak,
7  Assistant Classification and Parole Representative at MCSP. See Exhibit A to defendant's
8  12/23/05 status report. B. Moak declares that based solely on plaintiff's claim to MCSP staff that
9  two enemies of his were housed in Facility B at SVSP, and although these same two inmates had
10 been previously housed at MCSP in the same facility as plaintiff (apparently at the same time)
11 without any documented incident of problems between the inmates and plaintiff, CDCR made
12 arrangements to have the two enemies transferred to another facility prior to plaintiff's placement
13 at SVSP. A declaration by the Assistant Classification and Parole Representative W. Sanford at
14 SVSP is also included wherein the representation is also made that the two enemies, based only
15 on plaintiff's word that they are such, will have been transferred from SVSP before plaintiff's
16 placement there. See Exhibit B to defendant's 12/23/05 status report.
17       Plaintiff's putative motion for reconsideration of the recommendation of denial of
18 preliminary injunctive relief, filed on the same day, October 21, 2005, as was the Order, adopting
19 the findings and recommendations, was construed as an untimely supplemental objection to
20 them, in a January 4, 2006, Order, and denied. Plaintiff was therein cautioned that should he
21 seek reconsideration of the December 21, 2005, Order, he must do so timely. Also, on January 4,
22 2006, plaintiff was informed that he would have to proceed in the litigation pro se as no response
23 had come from the King Hall Civil Rights Clinic to the court's order and the time for doing so
24 had expired. Of course, subsequently, plaintiff has continued to file letters and requests;
25 however, the preceding should demonstrate the inordinate amount of time and effort on the part
26 of the court that plaintiff has demanded. He filed histrionic but inadequately explained requests

for transfer, on March 27, 2006, and April 4, 2006.  Of late, he has repeatedly filed requests for rulings on his pending motion, including a "motion" seeking to compel a ruling on his motion for leave to file a second amended complaint, and subsequently, asking that his case be assigned to a different magistrate judge because he has not received a response quickly enough.  See filings, dated June 26, 2006, July 19, 2006, August 11, 2006, August 16, 2006.  In light of the amount of time that has been expended on this case to date and because plaintiff continues to file letters and requests demanding immediate attention to any matter of his before this court without any thought to the extensive caseload with which this court is faced, the undersigned will now limit plaintiff to having one motion, which must be properly filed, before this court at a time.  Plaintiff must await a ruling on any pending motion before filing another, absent an emergency for which he must provide evidence of a good faith basis.

   The court has reviewed defendant's status report demonstrating that plaintiff's transfer was effected with appropriate precautions per the declarations of Dr. Lipon and Dr. Lee; that plaintiff's medical care and scheduled appointments have not been interrupted by his December 22, 2005, transfer from MCSP to SVSP and that plaintiff is receiving on-going care for his injuries and that his mental condition has been monitored.  See defendant Woodford's Status Report, filed on January 26, 2006.

   Plaintiff continues to be a participant for his mental health needs in the Correctional Case Management System; on January 3, 2006, plaintiff's left knee, back and right shoulder were evaluated by a local orthopedic surgeon, Dr. Pompan after which Dr. Lee reviewed the progress notes and spoke with Dr. Pompan.  Defendant's Exhibit D, Dr. Lee's declaration, ¶¶ 6-7.  On January 6, 2006, plaintiff was seen at the SVSP clinic and referred to a physician; on January 10, 2006, he was evaluated by a doctor with regard to his hypertension, joint pain and cardiovascular status.  Lee Dec., ¶ 8.  He received his third epidural steroid injection for his back on January 12, 2006, with a follow-up appointment scheduled for early February, 2006.  Lee Dec., ¶ 9.  Another colonoscopy was scheduled for early February 6, 2006.  Lee Dec. ¶ 11.  Dr.

Lee declares that plaintiff's previously scheduled appointment for late March, 2006, with an orthopedic surgeon regarding a consultation about his shoulder was still to be kept; Dr. Lee also asked that plaintiff's left knee also be evaluated at that time. Lee Dec., ¶ 12.

The court has also reviewed plaintiff's response, filed on March 1, 2006, confirming that he has received the medical treatment which defendants exhaustively set forth, including a third epidural steroid injection for his back pain on January 12, 2006, which, he asserts, eliminated his back pain completely for the first time since his 2001 back injury; he had had a follow-up appointment wherein his pain had increased minimally, allowing a 12-week follow-up appointment wherein his need for a fourth epidural steroid injection will be evaluated. He confirms that he was still to be seen at the UC Davis Ortho Clinic in late March for his shoulder and left knee and that he received a second colonscopy in February, 2006. Plaintiff does not dispute any representation made in defendant Woodford's status report as to the medical treatment he has received, upon his transfer, and in fact speaks very highly of Dr. Lee. See plaintiff's Medical Update, filed on March 1, 2006, pp. 1-3. Defendant Woodford has discharged the court's order.

First Amended Complaint

Included here are the allegations of the amended complaint as set forth previously by the court:

> [P]laintiff alleges that in January 2000, he suffered a serious knee injury in the prison laundry that has never been treated properly. First Amended Complaint (FAC), p. 3. Due to the defendants' deliberate indifference to, and long delay in, treating this serious injury, plaintiff now needs an artificial joint replacement in that knee. Id.
>
> In November of 2001, plaintiff suffered a serious back injury in the prison laundry while at work, which has never been properly treated primarily because defendant Hernandez, Warden at R. J. Donovan Correctional Facility, had plaintiff transferred "illegally" in 2004 despite a medical hold placed on plaintiff. FAC, p. 4. The transfer was in retaliation for plaintiff's having exposed the physical and sexual abuse of mentally ill inmates. Id. Defendant Hernandez placed plaintiff in administrative segregation for over

8

three months on false charges that were never adjudicated and had plaintiff transferred without a hearing in violation of due process. Id.

On April 15, 2002, plaintiff sustained a third injury in the prison laundry, tearing the rotator cuff in his right shoulder, an injury which has never been treated. Defendant Dr. Bradley Williams, a doctor at Doctor's Hospital at Manteca, under contract with Mule Creek State Prison (MCSP), delayed, and ultimately denied, treatment, ordering in the interim costly and unnecessary tests. Id.

Following plaintiff's "illegal" transfer, on January 26, 2004, to Folsom State Prison, he was transferred by the end of March, 2004 to CMC-E, a "supposed" medical treatment facility, when authorities at Folsom realized how much medical treatment plaintiff needed. Id. Defendant Marshall, Warden of CMC-E, had plaintiff transferred "illegally" to MCSP on August 11, 2004, by "falsifying" a CDC 1845 form. Id.

In the year plaintiff has been transferred to MCSP, plaintiff has received constant threats of a retaliatory transfer for continuing to complain about not receiving adequate medical care. Id. As of August 2005, five surgical procedures have been approved and scheduled for plaintiff. Id. On August 2, 2005, when plaintiff appeared before the Unit Classification Committee (UCC), he was told he would remain at MCSP for another year; shortly thereafter, defendants Arnold, Reyes, Smith and Brett Williams "decided to get rid of plaintiff" despite his pending surgical procedures. Id. Defendant Campbell, Warden of MCSP, has failed to protect plaintiff from this retaliatory action. Id. The anticipated transfer is also an effort by MCSP to avoid spending the $100,000 cost for all of plaintiff's surgeries. Id. Defendant Woodford has approved all of plaintiff's transfers. FAC, p. 5. Plaintiff seeks both injunctive relief and monetary damages.

See Order & Findings and Recommendations, filed on September 20, 2005, pp. 2-3; see also, Order & Findings and Recommendations, filed on October 27, 2005, adopted by Order, filed on December 21, 2005.

Motion for Involuntary Dismissal

Defendants bring a motion to revoke plaintiff's in forma pauperis status pursuant to the "three strikes" limitation of 28 U.S.C. § 1915(g), a motion in which all defendants join, alleging that plaintiff has filed at least three meritless actions in federal court. The federal in forma pauperis statute includes a limitation on the number of actions in which a prisoner can

proceed in forma pauperis.

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [§ 1915(g)] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Plaintiff, for his part, concedes that he has incurred more than three strikes in his prior litigation; he argues, however, that defendants should have brought this argument sooner and that he would have been subject to the "imminent danger" exception. In reply, defendants contend that there is no time limitation for bringing such a motion, that they bring it while his motion for leave to file a second amended complaint is pending, and that plaintiff does not qualify for the "imminent danger" exception.

As plaintiff concedes that he has had at least three qualifying strikes, the court need not engage in an analysis of this undisputed point. Moreover, under the circumstances under which this case commenced, wherein plaintiff alleged a sustained period of inadequate medical care for multiple painful injuries, accompanied by plaintiff's threats of suicide, this court would have found plaintiff qualified to proceed in forma pauperis under "imminent danger of physical injury" exception to § 1915(g). Further complicating the issue is that, as of February 27, 2006, court records demonstrate that plaintiff had paid the then-applicable filing fee in full.

The undersigned recognizes authority, including his own, for the proposition that an inmate may not "bring an action" "under the [IFP] section" if he has had three strikes or more, and if he does, the action should be dismissed in lieu of payment of the fee. However, this authority is questionable here in that the Ninth Circuit now recognizes the "three strikes" section as an affirmative defense and defendants have the initial burden of proof. Andrews v. King, 398 F.3d 1113 (9th Cir. 2005). Unless it could be established that plaintiff had actual notice of his

three strike status prior to the filing of the complaint, as defendants have pointed out here, how could he ever know whether to file IFP or pay the fee?  Not every dismissal is accompanied with a statement that the adverse to plaintiff resolution of a motion to dismiss counts as a strike.   How should a court deal with the imminent harm exception when a motion to dismiss is brought long after the complaint has been filed, and any alleged imminent injury has been addressed through preliminary motions – as was done here?  In other words, what is the point of a retroactive determination on this issue when the only thing we are really dealing with is the payment of $350.00?  This is unlike the exhaustion scenario where a plaintiff knows, or should know, that he has not exhausted administrative remedies on the very claim upon which he seeks court adjudication, and should have his claim dismissed for further action in the administrative arena.  See McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir.2002) (per curiam).

Moreover, the Ninth Circuit cases upon which defendants rely are questionable authority herein in that all three do not address in any explanatory way the issue here – whether an inmate can rectify an initial procedural mistake by paying the fee and "resuming" the action; the issue of dismissal versus an order to pay, or paying before a motion has been adjudicated, simply was not at issue in those cases.  See Tierney v. Kupers , 128 F.3d 1310 (9th Cir. 1997), Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998), Rodriguez v. Cook, 169 F.3d 1176, 1182 (9th Cir. 1999).  Issues which are not directly addressed in an adjudicative fashion do not stand as precedent on the issue.  San Diego County Gun Rights v. Reno, 98 F.3d 1121, 1130 (9th Cir.1996).  Indeed, Rodriguez is even more ambiguous for the state's position in that the dispositional clause of the opinion permitted the inmate to "resume" the appeal upon "prepayment" of the filing fee.  Anyone with a litigation background knows that a dismissed appeal, like a dismissed case without prejudice, means the appeal/case is treated as if the original filing had never been made.  Noa v. Key, 638 F.2d 77, 78 (9th Cir. 1980) citing Rabin v. Cohen, 570 F.2d 864 (9th Cir. 1978) (dismissed appeals); Henry v. Lungren, 164 F.3d 1240, 1241 (9th Cir. 1999) (case dismissed without prejudice).  Surely the Ninth Circuit was not saying in

1  Rodriguez that the appeal could be "resumed," knowing full well that it would be jurisdictionally
2  barred upon refiling because of lack of timely filing.  Moreover, use of the word  "resume" could
3  mean to pick up where one left off, or to start over.  See Webster's New World Dictionary, Third
4  College Edition indicating both interpretations.
5          The case of Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) did indeed
6  indicate that dismissal was the appropriate remedy in lieu of payment of the fee, but it is difficult
7  to reconcile an affirmative defense being treated as a jurisdictional prerequisite.
8          In sum, the court need not finally decide on dismissal versus payment in that
9  defendants have not adequately addressed the imminent harm exception to the three strikes rule –
10  an issue which was glaringly apparent from the outset in this case.  The motion fails.

Motion for Leave to File a Second Amended Complaint

12          Plaintiff seeks leave to file a second amended complaint in order to name new
13  defendants since his transfer at SVSP.  He claims that he was assaulted at SVSP, on December
14  28, 2005, by inmates aided by staff and then by staff alone.  Among the defendants he seeks to
15  add is defendants' current counsel.
16          "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a)
17  is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401
18  U.S. 321, 330, 91 S. Ct. 795 (1971).  Leave to amend pleadings "shall be freely given when
19  justice so requires."  Fed. R. Civ. P. 15(a).  Granting leave to amend, however, "is by no means
20  automatic." Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir.1993) (quoting Addington v.
21  Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981)). The district court may
22  consider factors such as undue delay, bad faith or dilatory motive on the part of the movant,
23  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the
24  opposing party, and futility of amendment.  Id. (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.
25  Ct. 227, 230 (1962)).
26  \\\\\

Case 2:05-cv-01701-GEB-GGH   Document 117   Filed 08/28/06   Page 13 of 14

In this case, the court will simply not allow plaintiff at this stage to add new parties and allegations that are substantially unrelated to the gravamen of the action in which plaintiff is proceeding in this court. Plaintiff seeks to encompass the attack he alleges occurred at SVSP within his allegations by characterizing it as part of the on-going retaliatory transfers to which he claims to have been subjected so that the CDCR may avoid providing him the expensive medical treatment he needs. If plaintiff seeks to proceed against new defendants at Salinas Valley State Prison on his allegations with regard to an assault at SVSP, he must file a new action appropriately, pursuant to 42 U.S.C. § 1983, that is, in the Northern District. As to any claims for prospective injunctive relief related to his medical care, plaintiff has already named in this action the CDC Director as a defendant, in an official capacity (in whose place Acting Secretary Tilton has been substituted), and no other individual need be named for such purposes. Plaintiff's motion for leave to file a second amended complaint is denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' January 26, 2006, motion for involuntary dismissal of this action, seeking to have plaintiff's in forma pauperis status revoked, pursuant to 28 U.S.C. § 1915(g), is denied.

2. Plaintiff's February 13, 2006, motion for leave to file a second amended complaint is denied.

3. Plaintiff's requests for transfer, filed on March 27, 2006 and April 4, 2006, are denied.

4. Plaintiff's "motion," filed on July 19, 2006, for the undersigned to rule on the motion to amend is denied as moot.

5. Plaintiff's motion to substitute in the name of the new Acting Director of CDCR as defendant in place of Jeanne Woodford, in his official capacity for prospective injunctive relief only, is granted, pursuant to Fed. R. Civ. P. 25(d), and the Clerk of the Court is directed to place the name of James Tilton, Acting Secretary of the CDCR, as the lead defendant

13

on the court's docket, in his official capacity, in the place of Woodford, in her official capacity.

6. This matter proceeds on the first amended complaint, filed on September 13, 2006, and defendants are directed to file their answer within 30 days.

7. Plaintiff must await a ruling on any pending motion, which must be properly filed, before filing another; should plaintiff seek emergency relief beyond this limitation, he must thoroughly set forth the good faith basis for so doing.

DATED: 8/28/06

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:009
cons1701.mtd+