IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAM CONSIGLIO,

    Plaintiff,                    No. CIV S-05-1701 GEB GGH P

    vs.

JEANNE WOODFORD, et al.,

    Defendants.               FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's inadequately supported motion for a preliminary injunction, filed on August 28, 2006.[1] This motion was filed on the same day as an order from this court of which plaintiff could not have had the benefit before filing the request. The court here notes the admonition contained in its Order, filed on August 28, 2006. This directive followed an exhaustive review of the conduct of the case to that date, including plaintiff's multiple filings, all of which will not be reiterated here:

\\\\\

---

[1] Defendant Bradley Williams' motion to dismiss, filed September 13, 2006, will be adjudicated at a later date.

1

> In light of the amount of time that has been expended on this case to date and because plaintiff continues to file letters and requests demanding immediate attention to any matter of his before this court without any thought to the extensive caseload with which this court is faced, the undersigned will now limit plaintiff to having one motion, which must be properly filed, before this court at a time. Plaintiff must await a ruling on any pending motion before filing another, absent an emergency for which he must provide evidence of a good faith basis.

Order, filed on 8/28/06, p. 7.

He was specifically ordered as follows:

> Plaintiff must await a ruling on any pending motion, which must be properly filed, before filing another; should plaintiff seek emergency relief beyond this limitation, he must thoroughly set forth the good faith basis for so doing.

Id., p. 14.

Underlying Allegations

Included here are the allegations of the first amended complaint as set forth previously by the court:

> [P]laintiff alleges that in January 2000, he suffered a serious knee injury in the prison laundry that has never been treated properly. First Amended Complaint (FAC), p. 3. Due to the defendants' deliberate indifference to, and long delay in, treating this serious injury, plaintiff now needs an artificial joint replacement in that knee. Id.
>
> In November of 2001, plaintiff suffered a serious back injury in the prison laundry while at work, which has never been properly treated primarily because defendant Hernandez, Warden at R. J. Donovan Correctional Facility, had plaintiff transferred "illegally" in 2004 despite a medical hold placed on plaintiff. FAC, p. 4. The transfer was in retaliation for plaintiff's having exposed the physical and sexual abuse of mentally ill inmates. Id. Defendant Hernandez placed plaintiff in administrative segregation for over three months on false charges that were never adjudicated and had plaintiff transferred without a hearing in violation of due process. Id.
>
> On April 15, 2002, plaintiff sustained a third injury in the prison laundry, tearing the rotator cuff in his right shoulder, an injury which has never been treated. Defendant Dr. Bradley Williams, a doctor at Doctor's Hospital at Manteca, under contract with Mule

> Creek State Prison (MCSP), delayed, and ultimately denied, treatment, ordering in the interim costly and unnecessary tests. Id.
>
> Following plaintiff's "illegal" transfer, on January 26, 2004, to Folsom State Prison, he was transferred by the end of March, 2004 to CMC-E, a "supposed" medical treatment facility, when authorities at Folsom realized how much medical treatment plaintiff needed. Id. Defendant Marshall, Warden of CMC-E, had plaintiff transferred "illegally" to MCSP on August 11, 2004, by "falsifying" a CDC 1845 form. Id.
>
> In the year plaintiff has been transferred to MCSP, plaintiff has received constant threats of a retaliatory transfer for continuing to complain about not receiving adequate medical care. Id. As of August 2005, five surgical procedures have been approved and scheduled for plaintiff. Id. On August 2, 2005, when plaintiff appeared before the Unit Classification Committee (UCC), he was told he would remain at MCSP for another year; shortly thereafter, defendants Arnold, Reyes, Smith and Brett Williams "decided to get rid of plaintiff" despite his pending surgical procedures. Id. Defendant Campbell, Warden of MCSP, has failed to protect plaintiff from this retaliatory action. Id. The anticipated transfer is also an effort by MCSP to avoid spending the $100,000 cost for all of plaintiff's surgeries. Id. Defendant Woodford has approved all of plaintiff's transfers.[2] FAC, p. 5. Plaintiff seeks both injunctive relief and monetary damages.

See Order, filed on August 28, 2006, pp. 8-9; see also, Order & Findings and Recommendations, filed on September 20, 2005, pp. 2-3; see also, Order & Findings and Recommendations, filed on October 27, 2005, adopted by Order, filed on December 21, 2005.

Motion for Preliminary Injunction

*Preliminary Injunction Standard*

The legal principles applicable to a request for injunctive relief are well established. To prevail, the moving party must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor. See Coalition for Economic Equity v. Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th

---

[2] Defendant James Tilton, in his official capacity for prospective relief only, has been substituted in for defendant Woodford. Order, filed on 8/28/06, pp.1-2, 13-14

1  Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point
2  being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under any
3  formulation of the test, plaintiff must demonstrate that there exists a significant threat of
4  irreparable injury."  Id.  In the absence of a significant showing of possible irreparable harm, the
5  court need not reach the issue of likelihood of success on the merits.  Id.

6        In cases brought by prisoners involving conditions of confinement, any
7  preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the
8  harm the court finds requires preliminary relief, and be the least intrusive means necessary to
9  correct the harm."  18 U.S.C. § 3626(a)(2).

10        *Motion*

11        Plaintiff claims that the defendants have "lied and mislead [sic] this court."
12  Motion, p. 1.  He references the earlier preliminary injunction he sought to prevent defendants
13  from continuing to transfer him from prison to prison both in retaliation for his attempts to obtain
14  medical care for his back, shoulder and knee injuries, as well as in an effort to avoid the costs of
15  his medical care by keeping him in transit.  Id.  Plaintiff asserts that defendants were able to
16  convince the court to permit the transfer to Salinas Valley State Prison (SVSP) from Mule Creek
17  State Prison (MCSP) because SVSP had an orthopedic specialist on staff.  Id.

18        Plaintiff further recounts that in denying plaintiff's previous preliminary
19  injunction motion, the court ordered defendants that if should they proceed with the transfer, they
20  were to make sure all his medical appointments were kept and that plaintiff should continue
21  being treated by a neurologist named, Dr. Bai, who had begun to treat plaintiff's back injury in
22  2005.  Motion, p. 2.  Plaintiff further states:

23        As of this date, plaintiff still has not received treatment for his
         back, shoulder, and knee injuries, and plaintiff has now been at
24        Salinas Valley State Prison for over 9 months.  In January of 2006,
         Dr. Bai requested plaintiff's return for a follow-up in 12 weeks but
25        that request was never honored.

26  Id.

Plaintiff maintains that instead of treating his injuries, the defendants are again planning to transfer him to another prison where he believes he will have to wait at least another year for treatment. Id. Plaintiff asks that the court enjoin defendants to transfer plaintiff back to MCSP, should he be transferred.

Following this motion (and possibly his receipt of the Order, filed on 8/28/06), plaintiff filed a letter on 9/8/06, wherein he references a past desire (counter to his 8/28/06 motion for a preliminary injunction), until May of 2006, to be transferred out of SVSP due to several assaults to which he alleges he was subject, the last of which he claims occurred in February of 2006, when he was housed in Ad Seg.[3] Letter, p. 1. He states, however, that he no longer fears for his safety because in early May of 2006, the F.B.I. interviewed him regarding the "very corrupt Green Wall officer's prison gang." Id. He continues, apparently oblivious to the motion he had filed just days earlier seeking to stay at SVSP, stating that, in light of the F.B.I. investigation, the correctional officers have not since posed a threat to his safety, and he no longer wishes to be transferred away from SVSP. Id.

Plaintiff does, however, ask that if the talk about closing down "this SNY facility" that he hears proves true, that he be returned to MCSP. Letter, pp. 1-2. He then goes on to reiterate what he had said in the 8/28/06 motion that the prison has not honored the court's order to continue his treatments with neurologist Dr. Bai, and that his shoulder has not been treated either. Letter, p. 2. He complains about not having been treated for a new neck injury, suffered on 12/28/05, arising from an alleged staff assault. He states that he has blurred vision and continued dizziness and that he has been threatened with another transfer if he keeps asking for a knee replacement, but also asserts that he has filed another § 1983 action in the Northern District concerning his treatment at SVSP. Id. Plaintiff ends with a reference to a third colonscopy that

---

[3] To further confuse the issue, plaintiff filed requests for transfer from SVSP on March 27, 2006, and April 4, 2006, which were inadequately supported and were denied. See Order, filed on 8/28/06.

was done on him on 9/1/06, wherein some tumors were found, promising to keep the court abreast as to whether the tumors are found to be cancerous. Id.

*Discussion*

Plaintiff's motion for injunctive relief suffers from a number of defects, not the least of which is the contradictory relief sought in a prior, as well as a follow-up letter. Taking it on its own, plaintiff fails to provide any evidence that he has not received any treatment for his back, shoulder and knee injuries for the preceding nine months. In fact, that assertion is completely contradicted by prior filings. The court sets forth the following from its Order, filed on August 28, 2006, which, again, plaintiff did not have at the time of filing the motion at issue on the same day:

> On October 27, 2005, this court filed an order and findings and recommendations. The court denied as unnecessary plaintiff's multiple requests for an evidentiary hearing. The undersigned recommended denial of plaintiff's motion for preliminary injunction, but also ordered that, if plaintiff were transferred to SVSP from MCSP, defendants would be required to file a declaration, within sixty days, ascertaining that each step set forth by Drs. Lipon and Lee for plaintiff's safe transfer has been effected and that no currently scheduled medical appointment/evaluation/procedure for plaintiff is vacated or cancelled, absent extraordinary cause. Plaintiff's mental condition must be monitored and defendants must include with the affidavit a status report on his transfer, on his safe housing at SVSP, and on the progress of his expedited medical treatment. There will be no extension of time. Failure to comply with this order will result in the imposition of sanctions against defendants.
>
> See Order (& Findings and Recommendations), filed on 10/27/05, p. 24.
> ................................................................................
>
> The court has reviewed defendant's status report demonstrating that plaintiff's transfer was effected with appropriate precautions per the declarations of Dr. Lipon and Dr. Lee; that plaintiff's medical care and scheduled appointments have not been interrupted by his December 22, 2005, transfer from MCSP to SVSP and that plaintiff is receiving on-going care for his injuries and that his mental condition has been monitored. See defendant Woodford's Status Report, filed on January 26, 2006.

>Plaintiff continues to be a participant for his mental health needs in the Correctional Case Management System; on January 3, 2006, plaintiff's left knee, back and right shoulder were evaluated by a local orthopedic surgeon, Dr. Pompan, after which Dr. Lee reviewed the progress notes and spoke with Dr. Pompan. Defendant's Exhibit D, Dr. Lee's declaration, ¶¶ 6-7.  On January 6, 2006, plaintiff was seen at the SVSP clinic and referred to a physician; on January 10, 2006, he was evaluated by a doctor with regard to his hypertension, joint pain and cardiovascular status. Lee Dec., ¶ 8.  He received his third epidural steroid injection for his back on January 12, 2006, with a follow-up appointment scheduled for early February, 2006.  Lee Dec., ¶ 9.  Another colonoscopy was scheduled for early February 6, 2006.  Lee Dec. ¶ 11.  Dr. Lee declares that plaintiff's previously scheduled appointment for late March, 2006, with an orthopedic surgeon regarding a consultation about his shoulder was still to be kept; Dr. Lee also asked that plaintiff's left knee be evaluated at that time. Lee Dec., ¶ 12.
>
>*The court has also reviewed plaintiff's response, filed on March 1, 2006, confirming that he has received the medical treatment which defendants exhaustively set forth, including a third epidural steroid injection for his back pain on January 12, 2006, which, he asserts, eliminated his back pain completely for the first time since his 2001 back injury; he had had a follow-up appointment wherein his pain had increased minimally, allowing a 12-week follow-up appointment wherein his need for a fourth epidural steroid injection will be evaluated.  He confirms that he was still to be seen at the UC Davis Ortho Clinic in late March for his shoulder and left knee and that he received a second colonoscopy in February, 2006.  Plaintiff does not dispute any representation made in defendant Woodford's status report as to the medical treatment he has received, upon his transfer, and in fact speaks very highly of Dr. Lee.  See plaintiff's Medical Update, filed on March 1, 2006, pp. 1-3.  Defendant Woodford has discharged the court's order.*

See Order, filed on August 28, 2006, pp. 4-5, 7-8 [emphasis added].

Plaintiff simply does not make the requisite showing to demonstrate that he has not received the medical care to which he believes himself to be entitled.  Moreover, his filings indicate a frequently shifting sentiment as to whether he seeks to be transferred from SVSP or to continue to be incarcerated there.  Plaintiff simply has not demonstrated "that there exists a significant threat of irreparable injury."  Oakland Tribune, supra, 762 F.2d at 1376.  He certainly makes no showing that he is subject to imminent transfer.

7

1 Speculative injury does not constitute irreparable harm. See <u>Caribbean Marine Servs. Co. v. Baldrige</u>, 844 F.2d 668, 674 (9th Cir. 1988); <u>Goldie's Bookstore, Inc. v. Superior Court</u>, 739 F.2d 466, 472 (9th Cir. 1984). A presently existing actual threat must be shown, although the injury need not be certain to occur. See <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 130-31, 89 S. Ct. 1562 (1969); <u>FDIC v. Garner</u>, 125 F.3d 1272, 1279-80 (9th Cir. 1997), <u>cert.</u> denied, 523 U.S. 1020 (1998); <u>Caribbean Marine Servs. Co.</u>, 844 F.2d at 674. As noted, in the absence of a significant showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits. <u>Oakland Tribune</u>, <u>supra</u>, at 1376. The court must recommend denial of plaintiff's motion.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for a preliminary injunction, filed on August 28, 2006, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 1/29/07

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:009
cons1701.mtn